IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 17-162 |
| ADRIAN CISNEROS-TORRES | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

**I.     INTRODUCTION**

Defendant Adrian Cisneros-Torres is a native and citizen of Mexico who has previously been deported from the United States on at least two prior occasions and who was found in the United States on February 28, 2017.

Cisneros-Torres was first encountered by law enforcement on June 26, 1993, when he was arrested by in Houston, Texas and charged with Failure to Stop and Give Info.   On October 22, 1993, he was convicted and sentenced to one year probation.

On May 29, 1994, Cisneros-Torres was again arrested by law enforcement in Houston, Texas and charged with Unlawful Carrying Weapon.   On August 26, 1994, he was convicted and sentenced to 10 days imprisonment.

On January 9, 1995, Cisneros-Torres was arrested again by law enforcement in Houston, Texas and charged with Evading Arrest and Possession of Marijuana (0-2 oz.).   On January 24, 1995, he was convicted of Possession of Marijuana and sentenced to 60 days imprisonment.

On May 31, 1999, Cisneros-Torres was arrested by law enforcement officials in Harris County, Texas and charged with Failure to Identify Oneself to Law Enforcement.   On June 8,

1

1999, he pleaded guilty in the District Court for Harris County and was sentenced to 45 days imprisonment.

On June 5, 1999, Immigration and Naturalization Service ("INS") Agent Quintanilla encountered Cisneros-Torres at the Harris County (Texas) Sheriff's Office following his fourth arrest in the United States and interviewed him to determine Cisneros-Torres' alienage and deportability. He stated that he was a native and citizen of Mexico who last entered the United States in 1995 without inspection or parole.

On June 25, 1999, INS officials personally served Cisneros-Torres with a Notice to Appear, which ordered him to appear before an immigration judge to show why he should not be removed from the United States. On July 6, 1999, an immigration judge in Houston, Texas ordered Cisneros-Torres deported to Mexico.

On July 8, 1999, Cisneros-Torres was removed "afoot" from the United States to Mexico via the Laredo, Texas ("LRT") port of entry. Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with the defendant's deportation and it contains the defendant's name, signature, photograph, alien number, and fingerprint. The I-205 was also signed by the immigration officials who fingerprinted Cisneros-Torres and witnessed his departure.

On October 27, 2006, Cisneros-Torres was arrested by law enforcement officers in Houston, Texas and charged with Evading Arrest and DUI. On August 12, 2014, the DUI charge was dismissed but there is an open warrant on the Evading Arrest count.

On June 28, 2008, Cisneros-Torres was arrested by law enforcement officers in Lambertville, New Jersey and charged with Fugitive from Justice. The charge was changed to

Disorderly Conduct and there is an open warrant for his arrest.

On July 31, 2008, Cisneros-Torres was again arrested by law enforcement officers in Lambertville, New Jersey and charged with Unlawful Possession of a Weapon. The disposition is unreported.

On August 8, 2008, Immigration and Customs Enforcement ("ICE") officers encountered Cisneros-Torres at the Hunterdon County Superior Court in Flemington, New Jersey. Prior to conducting a field interview, the ICE officers read Cisneros-Torres his Miranda rights in the Spanish language. Cisneros-Torres agreed to waive these rights by signing the Declaration of Rights/Waiver of Rights and answer the officers' questions. He stated that his true and correct name was Adrian Cisneros-Torres and that he also used the name "Roberto Ortiz." He admitted that he was a citizen of Mexico and that he had been deported from the United States on July 8, 1999. Finally, he admitted that he did not apply for permission to re-enter the United States. ICE officials reinstated Cisneros-Torres' prior order of removal.

On October 17, 2008, Cisneros-Torres was removed "afoot" from the United States to Mexico via the Hidalgo, Texas port of entry. Immigration officials executed a Form I-205, Warrant of Deportation/Removal, in connection with the defendant's deportation and it contains the defendant's name, signature, photograph, alien number, and fingerprint. The immigration officials who fingerprinted Cisneros-Torres and who witnessed the departure signed the I-205. Prior to his removal, immigration officials served Cisneros-Torres with an I-294, Warning to Alien Ordered Removed or Deported, dated October 7, 2008, which warned him that he was prohibited from entering, attempting to enter or being in the United States for a period of 20 years following his removal. The form also advised him that he was required to request and

obtain permission from the Attorney General to reapply for admission to the United States following his deportation and that illegal re-entry was a crime under 8 U.S.C. §1326 and punishable by two to twenty years' imprisonment. Cisneros-Torres and the immigration official who served the warning signed the I-294.

On December 17, 2016, law enforcement officers in Solesbury Township, Pennsylvania cited Cisneros-Torres with Driving without a License. On December 22, 2016, he pleaded guilty and was fined.

On February 28, 2017, deportation officers conducted an operation at 97 S. Main Street in New Hope, Pennsylvania to apprehend Cisneros-Torres because of his criminal history and also because he had previously been deported on two occasions. The officers identified Cisneros-Torres from prior removal photos as he was observed exiting a vehicle at that location. As the officers began to approach Cisneros-Torres and identified themselves as "police," Cisneros-Torres turned and ran away. The officers began a foot chase of Cisneros-Torres as he ran around the building on 97 S. Main Street, crossed Main Street onto Mechanic Street, continued running onto Waterloo Street, and then eventually jumped into the Delaware River. Cisneros-Torres began to swim up the Delaware River, while the deportation officers observed his activities and attempted to coax him to remove himself from the river. After approximately five minutes of coaxing by the deportation officers, Cisneros-Torres exited the water. The officers then conducted a field interview, during which Cisneros-Torres confirmed his identity as of Adrian Cisneros-Torres and volunteered that he was a citizen and national of Mexico and that he was currently unlawfully present in the United States.

Later, the deportation officers read Cisneros-Torres his Miranda rights and he agreed to

waive them by signing the Statement of Rights/Waiver form in both English and Spanish.  In a Record of Sworn Statement, he stated that his true and correct name was Adrian Cisneros-Torres and that he was a native and citizen of Mexico.  Cisneros-Torres further admitted that he had been removed from the United States in 1999 and 2008.  He also admitted that he last entered the United States in 2009 without inspection and admission by an immigration officer.  Further, he admitted that he did not obtain permission from the Secretary of Homeland Security or the Attorney General to re-enter the United States after his deportation.

On March 29, 2017, Cisneros-Torres was charged by Indictment with Reentry after Deportation, in violation of 8 U.S.C. § 1326(a).  On April 4, 2017, Cisneros-Torres was arraigned and entered a plea of not guilty.  On April 18, 2017, Cisneros-Torres changed his plea from not guilty to guilty.

This memorandum is submitted to aid the Court in fashioning an appropriate sentence for McKenzie.

## II. SENTENCING CALCULATION

### A. Statutory Maximum Sentence

The statutory maximum penalty for the violation of 8 U.S.C. § 1326(a) is 2 years' imprisonment, a one-year period of supervised release, a $250,000 fine, and a $100 special assessment.

### B. Sentencing Guideline Calculation

| | |
|---|---|
| Base Offense Level:   (USSG §2L1.2(a)) | 8 |
| Specific Offense Characteristics: | |
| None | |
| Total | 8 |

| | |
|---|---|
| Criminal History Category: | I[1] |
| Sentencing Range: | 0-6 months |
| Acceptance of Responsibility: (assuming plea) (USSG §3E1.1(a)) | -2 |
| Adjusted Offense Level: | 6 |
| Adjusted Sentencing Range: | 0-6 months |

There are no restitution or forfeiture issues in this case.

### III. SENTENCING ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the most appropriate sentence is one within the advisory guideline range of 0 to 6 months' imprisonment.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 133 S. Ct. 2072, 2083 (2013) (quoting *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) (plurality opinion); ellipsis in original). "Common sense

---

[1] Total of 0 Criminal History points.

In U.S. v. Hernandez-Gonzalez, the Third Circuit held that the date the offense of being "found in" the United States commenced, for purposes of calculating the defendant's criminal history under §4A1.2, is the date that the defendant entered the United States, not the date that he or she was discovered by immigration authorities. 495 F.3d 55, 60-61 (2007).

indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 133 S. Ct. at 2084. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.*

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

When taking into account all of the § 3553 (a) factors, the government submits that a sentence within the applicable advisory guideline range of 0 to 6 months' imprisonment is appropriate. The nature of the crime, the need to afford adequate deterrence, and to avoid unwarranted sentence disparities are the most significant factors and each warrants a sentence within the applicable guideline range.

The government is not privy to a Presentence Investigation Report at the present, therefore, the government's analysis of the § 3553(a) factors is solely based on the charges in

this case. Furthermore, the government is unaware of any statement made by the defendant at the time of his arrest or afterward which justifies his illegal reentry into the United States.

**IV.    CONCLUSION**

The government recognizes that the guidelines are entirely advisory, and that a district court has discretion to vary from an advisory range, subject only to deferential appellate review for reasonableness. However, our point is that a district court must consider the guideline range, and is usually well advised to follow the Sentencing Commission's advice, in order to assure fair, proportionate, and uniform sentencing of criminal offenders. Moreover, as explained earlier, there are no other 3553(a) factors in this particular case which militate against imposition of a sentence within that range; to the contrary, the 3553(a) factors on balance support the imposition of the recommended guideline punishment. Accordingly, the government recommends an ultimate finding by the Court that the applicable sentencing guideline range is 0 to 6 months' imprisonment for this defendant.

    Respectfully submitted,

    LOUIS D. LAPPEN
    Acting United States Attorney


      /s/ Anita Eve
    ANITA EVE
    Assistant United States Attorney

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been provided to:

        Nancy MacEoin, Esquire
        Defenders Association
        Federal Court Division
        The Curtis Center, Suite 540 West
        Independence Square West
        Philadelphia, PA   19106


        /s/ ANITA EVE
        ANITA EVE
        Assistant United States Attorney


DATED:   May 11, 2017